186 So. 338

SCHUTZMAN v. DOBROWOLSKI et al.

Nos. 34933, 35068.

Jan. 10, 1939.

Rehearing Denied Feb. 6, 1939.

Richard Kilbourne, of Clinton, and H. W. & H. M. Robinson, of New Orleans, for appellants.

Fred G. Benton and Carlos G. Spaht, both of Baton Rouge, for appellee.

LAND, Justice.

The above entitled and numbered cases involve appeals from two judgments in the same case, one being a motion to dismiss for failure to prosecute for five years, and the other a judgment on the merits. These appeals have been consolidated in this Court under the agreement of Appellants, and Appellees.

■ (1) We shall first consider the motion filed by defendants in the District Court to dismiss the suit under Article 3519 of the Revised Civil Code, which provides that:

"Whenever the plaintiff having made his demand shall at any time before obtaining final judgment allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same." (As amended by Act 107 of 1898, p. 155.)

The chronology of the case is as follows:

Petition filed.........................January   14, 1933.
Entry of Preliminary default......February   4, 1933.
Answer filed .........................March      2, 1933.
Mrs. Amelia Schutzman, plaintiff, died..........................May,        1933.
Heirs of plaintiff put in possession .................................June     29, 1933.
Judge Kilbourne recuses himself..January 26, 1938.
Case assigned for trial.............January   31, 1938.
Motion to dismiss filed by defendants ...............................February 16, 1938.
Amended   petition   filed   (making plaintiff's heirs parties plaintiff) ...............................February 18, 1933.

It appears from the above statement of proceedings in the case that plaintiff entered a preliminary default on *February 4, 1933,* and that defendants filed an answer to the merits *on March 2, 1933.* The motion to dismiss was filed *February 16, 1938,* or within five years after the answer to the merits had been filed.

In Lips v. Royal Insurance Co., 149 La. 359, 89 So. 213, the court held that because the answer was filed while the suit was pending *on an exception,* it could not have been filed to keep plaintiff from taking a default and confirming the same, and could not, therefore, be construed *as a step taken* in the prosecution of the case by plaintiff. Then the court gave its reason for so holding by stating that [page 214]: "When an answer is filed in a case *ripe for default— to forestall the taking of a default—the defendant may be considered to have acted, in filing the answer, under stress of a necessity created by plaintiff; and therefore the filing of the answer may be considered to have been a step taken by the plaintiff in the prosecution of the suit."* (Italics ours.)

This statement was, by no means, a mere dictum of the court, but was the pronouncement by the court of the principle of law to be followed in determining whether "the filing of an answer may be considered to have been a step taken by the plaintiff in the prosecution of the suit,".

under Article 3519 of the Revised Civil Code.

In the later case of Continental Supply Company v. Fisher Oil Co., 156 La. 101, 100 So. 64, it is said by the court:

"It is unnecessary for us to pass upon all the points of law raised by plaintiff, since we have reached the conclusion that defendant by its plea of prescription of four and five years to the note and cause of action, *and its prayer for the dismissal of plaintiff's action, waived its right to claim the abandonment of the suit. The plea was filed under the stress of necessity created by plaintiff to prevent the entering of a preliminary default, to be followed by a judgment rendered on confirmation thereof. It was, in effect, an answer to plaintiff's demands.* An answer to the merits waives the objection that the suit has been abandoned for want of prosecution for five years. Geisenberger v. Cotton, 116 La. 651, 40 So. 929." Pages 104 and 105, 100 So. page 65. (Italics ours.)

In the case of Geisenberger v. Cotton, cited supra, it is said by the Court, at page 655, 40 So. at page 930, of the opinion: "The contention that the suit was abandoned for want of prosecution for five years *was not made in the district court;* but, on the contrary, the defendant waived the objection by answering to the merits."

It is true that in the Lips Case, and, in the case at bar, the answer was filed before the expiration of the five year period, when there was nothing to waive. The plaintiff does not pretend that the answer filed in either case was a waiver, but that

as it was filed when the case was "ripe for default—to forestall the taking of a default—the defendant may be considered to have acted, in filing the answer, *under stress of a necessity created by plaintiff; and therefore the filing of the answer* may be considered to have been *a step taken by the plaintiff in the prosecution of the suit,"* as held in the Lips Case.

The language in the Lips Case is repeated substantially in Continental Supply Company v. Fisher Oil Co., supra: *"The plea was filed under the stress of necessity created by plaintiff to prevent the entering of a preliminary default, to be followed by a judgment rendered on confirmation thereof. It was, in effect, an answer to plaintiff's demands."*

No such language appears in Geisenberger v. Cotton, 116 La. 651, 40 So. 929, cited in Continental Supply Co. v. Fisher Oil Co., 156 La. 101, 100 So. 64, and must have been taken by the court from the Lips Case, upon which plaintiff relies, a fact going to show that the court did not consider such expressions in the Lips Case as mere dictum.

As the petition in this case was filed January 14, 1933, preliminary default entered February 4, 1933, and answer filed March 2, 1933, the filing of the answer, under the facts of the case, must be considered "a step taken by the plaintiff in the prosecution of the suit."

Since the motion to dismiss was filed on February 16, 1938, it was filed before the five years had elapsed from the filing of the answer, March 2, 1933, and was properly overruled.

■ (2) In addition to this, a second step was taken in the prosecution of the case, by plaintiff, by having the case assigned for trial January 31, 1938, within five years after the answer was filed March 2, 1933, the first step taken by plaintiff.

The minute entry as to the assignment of the case reads as follows:

"Monday, January 31st, 1938.

"Court opened at 11 a. m. pursuant to adjournment.

"Present and presiding, Hon. Geo. J. Woodside, Judge ad hoc.

"Mrs. Amelia Shutzman v. S. J. Dobrowolski et als.

"No. A–37

"*Upon motion*, it is ordered that this case be assigned for trial Friday, February, 18, 1938."

Transcript, No. 35,068, page 2.

This minute entry shows clearly that the case was not assigned ex parte by the trial judge, but was ordered assigned by him "on motion" made in open court. As defendants were contemplating the dismissal of the suit for failure of the plaintiff to take necessary steps in its prosecution within five years, it cannot be presumed that the defendants moved to have the case set down for trial. Under the circumstances the most natural and reasonable presumption is that the plaintiff moved to have the case fixed for trial. This was clearly an active step in the prosecution of the case, taken within five years after the answer to the merits had been filed by defendants, March 2, 1933, which we have

held to have been the first step taken by plaintiff.

We find no error in the judgment appealed from by defendants, overruling and dismissing the motion to dismiss at defendants' costs.

■ (3) On January 14, 1933, Mrs. Amelia Schutzman filed an action via ordinaria in the District Court of East Feliciana Parish against the three defendants on three vendor's lien mortgage notes aggregating $7200 dated March 12, 1920, in accordance with an act of sale and mortgage of that date, of certain lands in East Feliciana Parish.

On March 4, 1938, Judge Woodside, Judge ad hoc, rendered judgment in favor of the plaintiffs for the full amount of the claim made in the petition. There were some errors in the credits, so that a new trial was granted and a corrected judgment was rendered on March 16, 1938, in favor of plaintiffs, the substituted heirs of Mrs. Schutzman, who had died in the early part of 1933, and against defendants, recognizing the mortgage on the lands described in the original petition and ordering that the property be sold to satisfy the judgment.

From the judgment on the merits, the defendants have also appealed, and contend that the decree was erroneous because there was no evidence before the court that the mortgage of March 13, 1920, had been re-inscribed, and, accordingly, it had perempted.

In the first place this is a contest between the immediate parties to the act of mortgage.

Article 3344 of the Revised Civil Code provides as follows, to-wit:

"Consequently, neither *the contracting parties* nor their heirs, nor those who were witnesses to the act by which the mortgage was stipulated, can take advantage of the non-inscription of the mortgage." (Italics ours.)

Defendants, however, assert that here we have a vendor's lien, as well as a mortgage, executed under the authority of Article 3271 of the Revised Civil Code. This article provides that: "The vendor of an immovable only preserves his privilege on the object, when he has caused to be duly recorded at the office for recording mortgages, his act of sale, in the manner directed hereafter, whatever may be the amount due to him on the sale."

Article 3273 of the Revised Civil Code declares that "Privileges are valid *against third persons*, from the date of the recording of the act or evidence of indebtedness as provided by law;" and Article 3274 of the Code provides that "No privilege shall have effect *against third persons,* unless recorded in the manner required by law in the parish where the property to be affected is situated."

Article 3271, therefore, refers to the rights of *third persons,* and not to the immediate parties to the contract, as in the case at bar.

■ It is well settled that between the parties it is not necessary to record either the mortgage or vendor's lien and privilege.

In Thompson v. Comeau, 23 La.Ann. 555, the court said:

"The vendor's privilege in this case was not recorded, and did not require to be recorded as between the parties to the sale, and they are, in strictness, the only parties before the court. It does not appear that there are any third persons, creditors of the succession, as against whom a registry was essential."

■ (4) Finally, defendants contend that under Article 3369 of the Revised Civil Code and the decisions of Tilden v. Succession of Morrison, 33 La.Ann. 1067 and Delogny v. Her Creditors, 48 La.Ann. 488, 19 So. 614, that a mortgage which is not reinscribed does not have any effect after ten years, even between the parties to the contract of mortgage.

Article 3369 of the Revised Civil Code was construed to the contrary, in Commercial National Bank v. McDaniel, 156 So. 43, decided by the Court of Appeals of the Second Circuit, in which the jurisprudence of this State is fully reviewed. The Court said [page 46]:

"Article 3369 of the Civil Code provides:

" 'The registry preserves the evidence of mortgages and privileges during ten years, reckoning from the day of its date. * * *

" 'The effect of the registry ceases in all cases, even against the contracting parties, if the inscriptions have not been renewed within the respective periods of time above provided, in the manner in which they were first made; and in all cases, the reinscription of the mortgages and privileges shall

preserve their effect for ten years from the date of the timely renewal as above provided.'

"It will be noted that this law simply says *that the 'effect of the registry' of the mortgage, not the effect of the mortgage itself, ceases after ten years* unless reinscription takes place. This construction was placed on this article of the Code in Harman & Stringfellow v. Legrande et al., 151 La. 253, 91 So. 726, which so far as we know, is the latest and last judicial expression on the question.

"The same construction was given it in: Police Jury of West Baton Rouge v. Bergeron, 11 La.Ann. 390; Shepherd v. Orleans Cotton Press Co., 2 La.Ann. 100; Liddell's Ex'rs v. Rucker et al., 13 La.Ann. 569; Factor's and Traders' Ins. Co. v. Warren, 37 La.Ann. 85. [Italics ours.]

"In Seyburn v. Deyris et al., 25 La.Ann. [483] 486, it was held:

" 'There is no force in the objection that the mortgage perempted for want of reinscription within ten years. Neither inscription nor reinscription is necessary, so far as the parties to the mortgage or their heirs are concerned.'

"We are aware that there is a line of decisions which apparently, if not in reality, hold contrary to the doctrine laid down in the cited cases, but we think, and hold, that the interpretation of the law on the subject is that appearing in the most recent decision of the Supreme Court, Harman & Stringfellow v. Legrande, supra."

Harman & Stringfellow v. Legrande was decided by the whole court, without any dissenting opinion as to holding above cited.

The original article, 3369 of the Revised Civil Code (1870), reads as follows: "The registry preserves the evidence of mortgages and privileges during ten years, reckoning from the day of its date; its effect ceases, even against the contracting parties, if the inscriptions have not been renewed before the expiration of this time, in the manner in which they were first made."

The language of Article 3369 of the Code, "its effect ceases, even against the contracting parties" is found in Act 227 of 1918, amending article 3369 of the Code, and also in Act 50 of 1924, amending Act 227 of 1918. The Harman & Stringfellow v. Legrande Case was decided by the court April 24, 1922, but the Legislature of the State, at its next regular session in 1924, did not see fit to change this language. Necessarily, the interpretation placed upon it by this court in the Harman & Stringfellow Case, two years previously, was read into Act 50 of 1924.

Under these circumstances, we feel constrained to overrule the cases of Tilden v. Succession of Morrison, 33 La.Ann. 1067, and Delogny v. Her Creditors, 48 La.Ann. 488, 19 So. 614, in so far as it is held in these cases that a mortgage which is not reinscribed does not have any effect after ten years, even between the parties to the contract of mortgage.

(5) There were two judgments rendered in these consolidated cases:

(a) A judgment overruling the motion of defendants to dismiss this suit, on the ground that more than five years had elapsed without any steps in the prosecution of the suit having been taken by plaintiff.

(b)  A judgment in favor of plaintiffs, and against defendants, in the full sum of $7,200, with six per cent interest thereon from the 12th day of March 1920, until paid, less certain credits named in the judgment, plus ten per cent additional on both principal and interest as attorney's fees, and all costs of suit.

It was further ordered that plaintiffs' vendor's lien and mortgage on the property subject to same be recognized and made executory; that the property be seized and sold; and that plaintiffs be paid by preference and priority out of the proceeds of sale over all other persons.  See Judgment, No. 34,933, pages 32 and 33.

Defendants have appealed to this court from both of these judgments.

For the reasons assigned, both judgments appealed from are affirmed, defendants to pay the costs of appeal and of the District Court.